IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DONNA BILLINGTON, Mother, Natural Guardian
and Next Friend of BRITTANY BILLINGTON, a Minor,
as Assignee of PENSKE TRUCK LEASING CO., L.P.,
a Delaware Limited Partnership,

        Plaintiff,

        vs.                                   No. CIV 98-1570 JC/KBM (ACE)

CONTINENTAL CASUALTY COMPANY,
VIAD CORP., MOTOR COACH INDUSTRIES
INTERNATIONAL, INC., TRANSPORTATION
MANUFACTURING OPERATIONS, INC., TRANSIT
BUS INTERNATIONAL, INC., and TRANSPORT
TECHNOLOGY CORPORATION,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment, or in the Alternative, for Order Limiting Damages, filed October 1, 1999 *(Doc. 54)*; Plaintiff's Motion for Partial Summary Judgment Based on the Unambiguous Requirements of the Vehicle Lease Agreement Between the Parties, filed October 14, 1999 *(Doc. 60)*; and Plaintiff's Motion for Summary Judgment as Against CNA, filed October 14, 1999 *(Doc. 63)*.

**I.**        **Background**

In 1990, Grady Billington (Billington) was injured when he fell from a truck trailer that Defendant Transport Technology Corporation (TTC) had leased from Penske Truck Leasing Company (Penske). Billington subsequently filed a worker's compensation claim against TTC. The

parties settled the worker's compensation claim, and Billington released all claims against TTC and Defendant Continental Casualty Company (CNA) arising from the 1990 accident.

In 1993, Billington brought a state lawsuit for recovery of damages for his 1990 injuries. Billington sued Penske and others for products liability, breach of implied warranty, and negligence. Penske tendered the defense of that lawsuit and sought indemnification from TTC and CNA based on the claim that the truck lease agreement between TTC and Penske required TTC to provide insurance coverage for Penske's risk of liability in the state lawsuit. TTC and CNA refused to defend and indemnify because they believed that the state lawsuit was not covered by the CNA insurance policy as described in the certificate of insurance issued to Penske. The certificate of insurance states that Penske is "an additional insured as respects the operation and sole negligence of [TTC] for all vehicles leased and/or rented. . . ."[1] Exhibit 2 (attached to First Amended Claim for Damages as a Result of Breach of Contract and Misrepresentation (Amended Complaint), filed March 10, 1999 *(Doc. 16)*).

Penske settled the state lawsuit in late 1994. As part of the settlement, Penske agreed to a judgment against it for $215,000. Penske also assigned its claim for indemnification, defense, and insurance coverage under the lease agreement to Billington in exchange for Billington's agreement not to collect the judgment against Penske. Penske spent approximately $35,000 in attorney fees and costs to defend the state lawsuit. Because Billington is incarcerated in Texas, he assigned his rights under the Penske assignment to his daughter, Brittany. Brittany's mother, Donna Billington, brought this federal lawsuit on Brittany's behalf to assert whatever claim Penske had for indemnification, defense, and insurance coverage under the TTC-Penske lease agreement.

---

[1] The actual CNA insurance policies at issue do not name Penske as an additional insured.

In addition to TTC and CNA, Plaintiff is also suing Viad Corporation (Viad), Motor Coach Industries International, Inc.(MCII), Transportation Manufacturing Operations, Inc.(TMO), and Transit Bus International, Inc. (TBII). Viad is apparently the parent corporation of TTC as well as MCII, TMO, and TBII. The appropriateness of suing Viad, MCII, TMO, and TBII is the subject of another motion for summary judgment *(Doc. 65)*.

The Amended Complaint is divided into claims against Viad, TMO, MCII, and TTC, and claims against CNA. The claims against Viad, TMO, MCII, and TTC include possible misrepresentation by Viad, violation of the New Mexico Unfair Trade Practices Act by Viad, breach of the lease agreement between TTC and Penske caused by Viad, and breach of the lease agreement by TTC. Plaintiff further alleges that "[Viad], TMO, and TBII participated in, benefitted from, acceded to and ratified the lease between Penske and TTC." Amended Complaint at ¶ 28. In the alternative, Plaintiff alleges that Viad engaged in a civil conspiracy with CNA to issue at least one sham insurance policy. The claims against CNA include breach of its duty to defend and indemnify Penske, bad faith failure to defend or indemnify Penske, possible violation of the New Mexico Unfair Insurance Practices Act, and unreasonable failure to defend and/or indemnify warranting an award of attorney's fees pursuant to NMSA 1978, § 39-2-1 (1977). Plaintiff prays for judgment in the amount of $215,000 as well as the attorney fees incurred in bringing the state lawsuit and this lawsuit. Plaintiff also asks for punitive damages, interest, and costs.

**II.    Summary Judgment Standard**

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). Under FED. R. CIV. P. 56(c),

summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. *Thrasher v. B & B Chemical Co., Inc.*, 2 F.3d 995, 996 (10th Cir. 1993). The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant meets this burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### III.　Discussion

Defendants argue in their motion for summary judgment that the lease agreement between TTC and Penske is clear and unambiguous and did not require TTC to provide Penske with insurance coverage for the state lawsuit. Defendants contend that TTC and CNA were only obligated to provide standard automobile insurance coverage for Penske, not insurance for products liability. Defendants also argue that the insurance policy was limited to claims based on the sole negligence of TTC. Consequently, Defendants assert that CNA was not obligated to defend and indemnify Penske in the state lawsuit where the negligence of TTC was not an issue. Plaintiff opposes these arguments by filing cross-motions for summary judgment.

In addition to the above arguments, Defendants also contend that Plaintiff's claims against TTC and CNA are barred because Billington released TTC and CNA from all claims relating to his

1990 injury. Defendants further contend that the applicable statutes of limitations bar this lawsuit. Alternatively, if the Amended Complaint is not dismissed in its entirety, Defendants believe that damages in this case should be limited to the approximately $35,000 Penske spent in defending the state lawsuit.

### A. What Liability Insurance Coverage is Required by the Lease Agreement?

The first issue raised in Defendants' motion for summary judgment and one of Plaintiff's cross-motions for summary judgment is whether TTC breached the lease agreement with Penske by not providing Penske with adequate liability insurance coverage and so improperly denied Penske a defense and indemnity in the state lawsuit. To determine what liability insurance is required by the lease agreement, I must examine the meaning of the lease agreement itself. If a provision of an agreement is clear and unambiguous, it is conclusive. *Rushing v. Lovelace-Bataan Health Program*, 93 N.M. 168, 169, 598 P.2d 211, 212 (1979). Moreover, the usual and customary meaning is given to the language found in an agreement. *Sun Vineyards, Inc. v. Luna County Wine Dev. Corp.*, 107 N.M. 524, 528, 760 P.2d 1290, 1294 (1988).

> Paragraph 9 of the lease agreement states that the
>
> Customer shall, at its sole cost, provide liability coverage for Customer and Hertz Penske . . . in accordance with the standard provisions of a basic automobile liability insurance policy as required in the jurisdiction in which the Vehicle is operated, against liability for bodily injury, including death, and property damage arising out of the ownership, maintenance, use and operation of the Vehicle(s) with limits of at least a combined single limit of $5,000,000 per occurrence. . . .

Exhibit 1 (attached to Amended Complaint). It is undisputed that ¶ 9 of the lease agreement does not provide for products liability insurance. Paragraph 9, however, clearly and unambiguously provides for liability insurance coverage for "bodily injury . . . arising out of the ownership,

maintenance, use and operation of the Vehicle(s). . . ." This is so even though Penske is responsible for maintaining the vehicle. *See* Exhibit 1 at ¶ 1 (attached to Amended Complaint).

The question then becomes whether pursuant to ¶ 9 of the lease agreement was TTC responsible for obtaining an insurance policy which would provide Penske with a defense and indemnity for the state lawsuit. In the analogous context of cases brought against insurers, "[t]he duty to defend is distinct from and broader than, the duty to indemnify." *Western Heritage Ins. Co. v. Chava Trucking, Inc.*, 991 F.2d 651, 656 (10th Cir. 1993) (citing *Foundation Reserve Ins. Co., Inc. v. Mullenix*, 97 N.M. 618, 619-20, 642 P.2d 604, 605-06 (1982)). "It is immaterial that relief of a type not covered by the policy may also be sought against the insured, or that relief for alleged acts not covered by the policy may also be sought, as long as the claimant has 'pleaded any grounds against the insured coming within the terms of the policy.'" *Valley Improvement Ass'n, Inc. v. United States Fidelity & Guar. Corp.*, 129 F.3d 1108, 1116 (10th Cir. 1997) (citations omitted). Any ambiguity should be resolved in favor of potential coverage. *Id*.

When Billington sued Penske in state court, he sued Penske for negligently maintaining the trailer among other things. Exhibit D at ¶ 8, Complaint for Damages Resulting From Personal Injury, No. CV 93-67, filed Feb. 11, 1993, in the Fifth Judicial District Court, County of Chaves, State of New Mexico (attached to Defs.' Am. Statement of Facts in Support of Their Mot. for Summ. J., or in the Alternative, for Order Limiting Damages (Amended Statement of Facts), filed Oct. 12, 1999 *(Doc. 57)*). Paragraph 9 of the lease clearly states that TTC would provide insurance for bodily injury arising from the maintenance of the vehicle. Consequently, I find that the state lawsuit was within the scope of coverage to be provided by TTC. Therefore, as a matter of law, I conclude that

pursuant to the lease agreement TTC should have obtained an insurance policy for Penske which would have defended Penske in the state lawsuit.

With respect to indemnification, "[w]hen an insurance company unjustifiably fails to defend it becomes liable for a judgment entered against the insured and for any settlement entered into by the insured in good faith" which is reasonable. *State Farm Fire & Cas. Co. v. Price*, 101 N.M. 438, 445, 684 P.2d 524, 531 (Ct. App.), *cert. denied*, 101 N.M. 362, 683 P.2d 44 (1984), *overruled on other grounds*, *Ellingwood v. N. N. Investors Life Ins. Co.*, 111 N.M. 301, 805 P.2d 70 (1991) (citation omitted). *See also Valley Improvement*, 129 F.3d at 1125-26. In this case, Defendants present no evidence to contradict Plaintiff's evidence that the state settlement was reasonable and made in good faith. *See* Aff. of Larry D. Beall, filed Aug. 24, 1999 *(Doc. 49)* (Penske attorney stating settlement was reasonable and made in good faith). Accordingly, as a matter of law, TTC should have provided Penske with an insurance policy which would have indemnified Penske.

Plaintiff also complains that the CNA "fronting" policies obtained by TTC do not fulfill the lease agreement's promise to provide for liability insurance. *See* Exhibit 1 at Deductible Endorsement (attached to Mem. in Supp. of Mot. for Summ. J. as to CNA, filed Oct. 14, 1999 *(Doc. 64)*) (the amount of the deductible is equal to the limits of the liability insurance, $5,000,000, and CNA has no duty to defend). Under such fronting policies, the insured becomes in essence the insurer of any risk. Nothing in the lease agreement states that such a policy would be acceptable to Penske. Nor is there any evidence that fronting policies are the usual and expected type of insurance to be provided in vehicle rental agreements requiring standard automobile liability insurance. I, therefore, find that the fronting policies do not fulfill TTC's obligation under the lease agreement to provide standard automobile liability insurance. In sum, I find that summary judgment in the Plaintiff's favor is

appropriate on the claim that TTC breached the lease agreement by not providing Penske with an insurance policy which would have provided Penske with a defense and indemnity.

      **B.    Do the Contract Claims Against CNA Fail Because the Certificate of Insurance Provided Penske with Insurance Applicable Only to the Sole Negligence of TTC?**

Defendants further argue that the state lawsuit was completely outside the scope of CNA's insurance coverage of Penske, and so CNA was not obligated to tender a defense or indemnify Penske. Defendants base this argument on the certificate of insurance which states that Penske is "made an additional insured as respects the operation and sole negligence of [TTC] for all vehicles. . . ." Exhibit 2 (attached to Amended Complaint). The certificate of insurance also adds that it "is not a policy of insurance. It neither affirmatively nor negatively amends, extends, nor alters the coverage or limits of liability afforded by any of the policies designated herein." *Id.* The actual insurance policies state that liability coverage is extended to insureds where there is a bodily injury "caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"[2] Exhibit 1 at 2 (attached to Mem. in Supp. of Mot. for Summ. J. as to CNA, filed Oct. 14, 1999 *(Doc. 64)*).

Defendants cite to *Fittro v. Lincoln Nat. Life Ins. Co.*, 111 Wash.2d 46, 757 P.2d 1374 (1988), for the proposition that a certificate of insurance take precedence over the actual insurance policy. That case is distinguishable, however, from this one because it applies to group insurance policies in states which statutorily require the issuance of certificates of insurance. Accordingly, I will begin my analysis by determining if the certificate of insurance is ambiguous and subject to

---

[2] Although Penske is not a named insured in the actual insurance policies, the certificate of insurance states that it is. For purposes of this discussion, I will assume that Penske is indeed an additional insured since that was the intent of the parties.

-8-

construction by this Court. *See Western Heritage*, 991 F.2d at 654 (citing *Gamboa by Gamboa v. Allstate Ins. Co.*, 104 N.M. 756, 759, 726 P.2d 1386, 1389 (1986)). "In determining whether an ambiguity exists, [the court] consider[s] the policy as a whole . . . and will find ambiguity only if the contract 'is reasonably and fairly susceptible of different constructions. . . ." *Id.* (citations omitted). I find as a matter of law that the phrase "operation and sole negligence of Transport Technology Corporation for all vehicles" is subject to two different reasonable interpretations and so is ambiguous. First, one could interpret that phrase to mean, as Defendants have, that coverage is only available to Penske if TTC is solely negligent. On the other hand, as Plaintiff argues, one could interpret that phrase as providing coverage for Penske's operation of all vehicles as well as for TTC's sole negligence.

Since I have found that the certificate of insurance is ambiguous, I must liberally construe the certificate of insurance in favor of Penske so that Penske's reasonable expectations regarding the insurance coverage are protected. *See Sanchez v. Herrera*, 109 N.M. 155, 159, 783 P.2d 465, 469 (1989). In this case, both the lease agreement and the actual insurance policies provide that coverage would be made for bodily injury resulting from the maintenance and use of the vehicles. The certificate of insurance only makes sense with respect to the lease agreement and insurance policies if it is construed to certify the presence of insurance for Penske's operation of vehicles as well as TTC's sole negligence. Considering this construction of the certificate of insurance along with the actual insurance policies, CNA should have provided coverage to Penske for the state lawsuit. Accordingly, I find that summary judgment in Plaintiff's favor is appropriate with respect to the issue of whether CNA breached its duty to defend and indemnify Penske.

Plaintiff also argues that since CNA's denial of a defense and indemnity had no merit, that denial of defense and indemnity was also objectively unreasonable pursuant to NMSA 1978, § 39-2-1 (1977)[3] for purposes of an award of attorney fees. The question of whether an insurer acted reasonably or unreasonably, however, is one of fact to be determined at trial. *Valley Improvement*, 129 F.3d at 1123. Consequently, summary judgment is not appropriate on that issue and will be denied.

### C. Does the 1992 Release Signed by Billington Bar Plaintiff's Claims Against TTC and CNA?

Defendants argue that as Billington's assignee, Brittany is barred from making any claims against TTC and CNA because Billington released TTC and CNA from all claims relating to his 1990 injury. The release specified that Billington as well as his assignees released TTC and CNA from those claims. Exhibit C (attached to Amended Statement of Facts). *Associates Loan Co. (N. S. L.) v. Walker*, 76 N.M. 520, 523, 416 P.2d 529, 531 (1966), held that "an assignee of a chose in action acquires by virtue of his assignment nothing more than the assignor had and all equities and defenses which could have been raised by the debtor against the assignor are available to the debtor against the assignee." Accordingly, Defendants have all of the defenses which they could have asserted against the original assignor, Penske. Defendants, however, argue that they can also raise any defenses against Brittany that they could have raised against Billington. Successive assignees, like Brittany, take their assignments subject to the equities and presumably the defenses existing between the original assignor and the debtor, not as between the original assignee and the debtor. *See*

---

[3] Section 39-2-1 states that "[i]n any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorney's fees and costs of the action upon a finding by the court that the insurer acted unreasonably in failing to pay the claim."

*6A C.J.S. Assignments* § 102 (1975). Consequently, Defendants cannot claim defenses arising from every assignee turned assignor. I, therefore, find that the only defenses Defendants can assert are those it could have asserted against Penske. That being so, Billington's release has no affect on any claims Penske might have had against Defendants. Summary judgment is not warranted on the grounds of Billington's release.

### D. Do the Various Statutes of Limitations Bar this Lawsuit?

Defendants contend that Plaintiff's allegations of breaches of contract, misrepresentation, bad faith failure to defend, civil conspiracy and unfair trade practices arise out of the lease which was entered into in June 1989. Since this lawsuit was not filed until November 1998, Defendants argue that any applicable statute of limitations had run thus barring Plaintiff's Amended Complaint.

#### 1. Breach of Contract Claims

In New Mexico, the statute of limitations for breach of a written contract is six years. NMSA 1978, § 37-1-3(a) (1880). "It is axiomatic in contract actions that a cause of action accrues at the time of the breach. New Mexico has refined this rule by holding the cause of action accrues at the time of injury." *Zamora v. Prematic Serv. Corp.*, 936 F.2d 1121, 1123, (10th Cir. 1991) (citation omitted). In this case, the alleged injury occurred when George Wheat denied Penske its demand for a defense and indemnity on May 20, 1993. Exhibit 1 (attached to Aff. of Larry D. Beall). Less than six years elapsed from that time until this lawsuit was filed in November 1998. Consequently, the statute of limitations does not bar Plaintiff's breach of contract claims.

## 2. Misrepresentation, Bad Faith Failure to Defend, Civil Conspiracy, and Unfair Trade Practices Claims

The statute of limitations applicable to the misrepresentation, bad faith failure to defend, civil conspiracy, and unfair trade practices claims is four years. NMSA 1978, § 37-1-4 (1880). Generally, the four-year statute of limitations period commences when the plaintiff sustains an actual injury and discovers, or through reasonable diligence should have discovered, the facts essential to the cause of action. *See, e.g., Sharts v. Natelson*, 118 N.M. 721, 724, 885 P.2d 642, 645 (1994) (citations omitted). A plaintiff "may suffer injury through loss of a legal right or harm to a legal interest even though the [plaintiff] has not yet ascertained the amount of his or her damages. . . ." *Id*. at 725, 885 P.2d at 646 (citations omitted).

In this case, Plaintiff relies on *Torrez v. State Farm Mut. Auto. Ins. Co.*, 705 F.2d 1192 (10th Cir. 1982) to support her assertion that the four-year statute of limitations should have commenced when judgment in the state lawsuit was entered against Penske in December 1994. *Zamora v. Prematic Serv. Corp.*, however, distinguished *Torrez*

> as it involved a claim against an insurer for a bad faith refusal to settle a claim for the policy limits, which resulted in a judgment against the insured above the policy limits. The insured would not have known that insurer's actions were wrong and that liability existed for the excess until the jury rendered its verdict. *Torrez* did not turn on the issue of ascertainment of damages but rather upon ascertainment of liability in excess of policy limits.

936 F.2d at 1123 (citations omitted). Likewise, *Torrez* is distinguishable from this case since this case is not about liability in excess of policy limits. Accordingly, the date judgment was entered against Penske is not the correct date to commence the four-year statute of limitations. Rather, the date of actual injury occurred in May 1993 when Penske was refused a defense and indemnity. Also, at that time, Penske should have through due diligence discovered the facts essential to its claims of

misrepresentation, bad faith failure to defend, civil conspiracy, and unfair trade practices. Consequently, I find that Plaintiff failed to meet the four-year statute of limitations and so her claims for misrepresentation, bad faith failure to defend, civil conspiracy, and unfair trade practices claims are now barred.

### E. Should the Damages in this Lawsuit be Limited to Only the Attorney Fees Penske Incurred in the State Lawsuit?

Finally, Defendants argue that if this case is not dismissed pursuant to summary judgment, damages should be limited to the approximately $35,000 in attorney fees which Penske incurred in defending the state lawsuit. Plaintiff argues that damages should also include the $215,000 judgment against Penske although Penske is not obligated to pay that judgment pursuant to the settlement agreement and assignment of Penske's claims to Billington. Defendants cite to an Arizona case, *Cunningham v. Goettl Air Conditioning, Inc.*, 194 Ariz. 236, 908 P.2d 489 (1999), to support their argument while Plaintiff cites to a New Mexico case, *State Farm Fire & Cas. Co. v. Ruiz*, 36 F. Supp.2d 1308 (D.N.M. 1999), to support her argument. I find that *Ruiz* is more persuasive than *Cunningham* because it discusses *Valley Improvement*, a Tenth Circuit case which explains New Mexico law on the subject. Relying on *Valley Improvement,* the *Ruiz* court held that when an insurer breaches its duty to defend, as in this case, it "is liable for the amount of the settlement, at least to policy limits, to the extent that the settlement was reasonable and entered into in good faith." 36 F. Supp.2d at 1318. As discussed, *supra*, it is undisputed that the settlement in the state lawsuit was reasonable and entered into in good faith. Following *Ruiz*, I find that damages should not be limited to $35,000 but should also include the settlement amount.

## IV.    Conclusion

Summary judgment should be granted in Plaintiff's favor on the claim that TTC breached the lease agreement in not providing Penske with an insurance policy which would have defended and indemnified Penske for the state lawsuit. Summary judgment should also be granted in Plaintiff's favor on her claim that CNA breached its duty to defend and indemnify Penske. Summary judgment, however, is not appropriate with respect to Plaintiff's claim that CNA unreasonably refused to defend and indemnify. Moreover, summary judgment is not appropriate on the grounds that Billington and his assignees released TTC and CNA from any claims arising from his injuries. In addition, I find that Plaintiff's contract claims fall within the six-year statute of limitations and so cannot be barred for that reason. I further find that Plaintiff's misrepresentation, bad faith failure to defend, civil conspiracy, and unfair trade practices claims should be dismissed for failure to comply with the four-year statute of limitations. Finally, I find that damages cannot be limited to the attorney fees Penske incurred in defending the state lawsuit.

Wherefore,

IT IS ORDERED that Defendants' Motion for Summary Judgment, or in the Alternative, for Order Limiting Damages *(Doc. 54)* is **granted in part**, and Plaintiff's misrepresentation, bad faith failure to defend, civil conspiracy, and unfair trade practices claims are dismissed with prejudice.

IT IS ALSO ORDERED that Plaintiff's Motion for Partial Summary Judgment Based on the Unambiguous Requirements of the Vehicle Lease Agreement Between the Parties *(Doc. 60)* is **granted**.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment as Against CNA *(Doc. 63)* is **granted in part** as to only CNA's breach of its duty to defend and indemnify Penske.

DATED this 15th day of December, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff: | William G. Gilstrap II<br>Albuquerque, New Mexico |
| | Charles C. Currier<br>Hunt & Currier<br>Roswell, New Mexico |
| Counsel for Defendants: | Eric R. Burris<br>Keleher & McLeod<br>Albuquerque, New Mexico |
| | Donald A. Wall<br>Claudia T. Salomon<br>Squire, Sanders & Dempsey<br>Phoenix, Arizona |